Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| OSCAR MESTEY VILLAMIL<br><br>Parte Recurrente<br><br>v.<br><br>JUNTA DE DIRECTORES DEL CONDOMINIO ATRIO REAL; SU PRESIDENTA DANIA SERRANO; MARYSSETTE CANTRES (ADMINISTRADORA)<br><br>Parte Recurrida | TA2026RA00237 | *Revisión Administrativa* procedente del Departamento de Asuntos del Consumidor<br><br>QEE Núm. C-SAN-2025-0021479<br><br>Sobre: Ley de Condominios |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera

Rodríguez Flores, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 25 de junio de 2026.

Comparece ante nosotros el señor Oscar Mestey Villamil (señor Mestey Villamil o recurrente) mediante el recurso de epígrafe, incoado el 7 de mayo de 2026.[1] Solicita que revoquemos la *Resolución* emitida el 31 de marzo de 2026, y notificada el 7 de abril de 2026, por el Departamento de Asuntos del Consumidor (DACo).[2] Mediante el referido dictamen, el DACo decretó el archivo de la querella radicada por el señor Mestey Villamil contra la Junta de Directores del Condominio Atrio Real, su presidenta Dania Serrano, y su administradora Maryssette Cantres (Junta o recurridas), por haberse cumplido con el remedio solicitado.

Examinado el escrito de revisión, el alegato en oposición presentado por la Junta y los documentos que conforman los respectivos apéndices, *confirmamos* el dictamen recurrido.

---

[1] *Revisión*, SUMAC-TA, entrada 1.
[2] *Resolución*, *Íd.*, entrada 4, anejo 1.

# I.

El 13 de marzo de 2025, el señor Mestey Villamil incoó una *Querella* ante el DACo contra la Junta.[3] En síntesis, alegó ser el titular y residente del apartamento número 15 del Condominio Atrio Real y adujo que la Junta ha incumplido sus obligaciones conforme a la *Ley de Condominios* al no corregir las filtraciones en las paredes de uso común del edificio que afectan su apartamento. Alega, además, que la Junta no ha respondido sus pedidos para solución del problema y ha permitido modificaciones a la estructura, como cables y tuberías de desagüe, que también afectan su unidad. A tales efectos, el señor Mestey Villamil solicitó que la agencia ordenara a la Junta a corregir las filtraciones y eliminar los cables y tuberías de desagüe, más la imposición de costas y honorarios de abogado.

El 3 de diciembre de 2025, se presentó una querella enmendada en la que amplía sus alegaciones originales e incluye nuevas descripciones de alegados daños y una reclamación por daños extracontractuales y la propiedad.[4]

La Junta presentó su contestación a la querella original y a la enmendada.[5]

El 4 de diciembre de 2025, el DACo emitió una *Minuta y Orden.*[6] Mediante esta, reconoció que el señor Mestey Villamil presentó una querella enmendada que aún no obraba en el expediente administrativo. Además, hizo constar lo siguiente:

> [U]na vez se notifique la querella enmendada, el expediente será referido a la división de Servicios Auxiliares para que las partes sean citadas a una inspección conjunta con un técnico del Departamento.
>
> Una vez se notifique el correspondiente informe y transcurran los términos para presentar las

---

[3] *Querella, Íd.*, entrada 4, anejo 2 A y B.
[4] *Querella Enmendada, Íd.*, anejo 3 A y B.
[5] *Contestación a la Querella y Solicitud de Resolución Sumaria,* entrada 6, apéndice 3; *Contestación a la Querella Enmendada y Solicitud de Resolución Sumaria, Íd.,* apéndice 7.
[6] *Minuta y Orden,* entrada 1, anejo 4.

correspondientes objeciones, el caso será citado nuevamente a vista administrativa en su fondo.

Así, el 2 de febrero de 2026, la agencia citó a las partes a una inspección ocular de la propiedad del señor Mestey Villamil, a ser realizada el 3 de marzo de 2026, por un técnico del DACo.[7]

Tras la inspección ocular, el 26 de marzo de 2026, la Junta presentó una *Moción Informativa en Cumplimiento de Acuerdos Durante Inspecci[ó]n de DACo y en Solicitud de Archivo.*[8] Destacó que se llegaron a ciertos acuerdos durante la inspección. En específico, la Junta expuso, en lo pertinente, que:

> 2. Durante [la] inspección, la parte querellante expuso sus peticiones y alegaciones en torno a las áreas alegadamente afectadas en el interior de su apartamento (paredes contiguas a las ventanas en dos cuartos y una sección del techo en el cuarto principal), conforme a la teoría de su reclamación.
>
> 3. En ánimo de atender los planteamientos presentados y de propiciar remedios adecuados, la parte querellada, Atrio Real, se comprometió a realizar ciertas reparaciones accesorias dentro del apartamento del querellante, incluyendo, entre otras, el sellado interior de ventanas, así como otras reparaciones menores, incluso se revisaron los receptáculos de luz eléctrica para probar su utilidad y eficiencia, siendo (sic) que todo está en funcionamiento y se realizaron trabajos de pintura en las paredes y áreas de techo reparadas.
>
> 4. Los referidos trabajos guardaban relación, en su mayoría, con la enmienda formulada por la parte querellante.
>
> 5. Las reparaciones y trabajos antes descritos ya fueron completados por la parte querellada, conforme acordados durante la inspección efectuada en presencia del Inspector asignado.
>
> 6. En apoyo de lo aquí informado, se acompañan y se pondrán a disposición del honorable Foro fotografías del antes y después de las reparaciones realizadas. Previo a estas acciones, la parte querellada había corregido todas las reclamaciones anteriores contenidas en la querella original del querellante, que incluyeron la remoción de tuberías de aires acondicionados, y la relocalización de los mismos por parte de los inquilinos de otros apartamentos luego de notificaciones pre-legales realizadas a estos condóminos, limpieza, sellado y pintura de toda la pared de la parte posterior de la

---

[7] *Notificación de Citación de Inspección, Íd.*, anejo 5.
[8] *Moción Informativa en Cumplimiento de Acuerdos Durante Inspecci[ó]n de[l] DACo y en Solicitud de Archivo, Íd.*, anejo 8.

fachada del edificio donde se alegaba el problema de acumulación de humedad por parte del querellante.

7. En vista de lo anterior, la parte querellada solicita respetuosamente que este Honorable Foro tome conocimiento del cumplimiento de los acuerdos alcanzados durante la inspección ocular. Consecuentemente, se solicita que se den por cumplidos los mismos y que, en mérito de lo anterior, este Honorable Foro proceda con el cierre y archivo de … [la] querella y [la] querella enmendada, con cualquier otro pronunciamiento que en derecho proceda.[9]

A raíz de esto, el DACo emitió una *Resolución* el 31 de marzo de 2026, la cual fue archivada y notificada en autos el 7 de abril de 2026.[10] En su dictamen, aludió a la moción transcrita y expresó que:

En síntesis, dicho escrito indica, que en virtud de unos acuerdos logrados durante la inspección realizada el pasado 3 de marzo de 2026, la parte querellada se comprometió a realizar ciertas reparaciones dentro del apartamento de la parte querellante, incluyendo entre otras, el sellado del interior de las ventanas, así como otras reparaciones menores y se realizaron trabajos de pintura en las paredes y áreas de techo reparadas, entre otros. Esto guardaba relación con la enmienda a la querella realizada por la parte querellante. Las labores fueron culminadas y la parte querellada acompañó con su escrito, fotos de las labores realizadas.[11]

De tal forma, el DACo ordenó el cierre y archivo de la querella, por haberse cumplido con el remedio solicitado por el señor Mestey Villamil.[12]

En desacuerdo con la determinación agencial, el señor Mestey Villamil presentó una *Moción de Reconsideración* el 13 de abril de 2026[13], y una *Segunda Moción de Reconsideración* el 17 de abril de 2026.[14] En general, alegó que no fue notificado de la moción en solicitud de archivo de la querella presentada por la Junta ni de la copia del informe del técnico del DACo. Indicó, además, su insatisfacción con los trabajos realizados. En cuanto a la vista de

---

[9] *Íd.*
[10] *Resolución, Íd.*, anejo 1.
[11] *Íd.*
[12] *Íd.*
[13] *Moción de Reconsideración, Íd.*, anejo 6.
[14] *Segunda Moción de Reconsideración, Íd.*, anejo 7.

inspección conjunta, el recurrente reconoció la falta de comparecencia de su representante legal y afirmó que:

> "estando en [el] apartamento, no entendemos cómo, por qué y/o para qué, el inspector sugirió llegar a un acuerdo y propuso que se mitigara la situación. Nuestro cliente, quien no se encontraba en ese momento representado por nosotros, de forma ingenua y sin representación legal[,] <u>asumió que era su deber consentir y así lo hizo</u>".[15]

El señor Mestey Villamil adujo que el técnico del DACo se había extralimitado en su función al solicitar a las partes explorar un acuerdo, a pesar de la incomparecencia de su abogado a la inspección ocular. Por las actuaciones del inspector y por no haber estado asistido por su representación legal durante la inspección, el recurrente solicitó que se reabriera el caso para que se le permitiera impugnar o validar el informe del inspector del DACo.

Ambas solicitudes de reconsideración fueron rechazadas de plano por el DACo.

Inconforme aún, el 7 de mayo de 2026, el señor Mestey Villamil acudió ante este Tribunal de Apelaciones mediante un escrito de *Revisión* y apuntó la comisión de los siguientes errores:

> Erró al permitir el cierre del expediente administrativo sin tomar en consideración el reclamo y parecer de la Parte Querellante-Peticionario.

> Violó el debido proceso de ley la agencia administrativa de DACO, al cerrar el caso y archivarlo, permitiendo que el inspector no cumpliera con las directrices emitidas en la minuta del 3 de diciembre de 2025, las cuales especificaban su ante el proceso de inspección del apartamento de la Parte Querellante-Peticionario.[16]

En síntesis, indica que el inspector del DACo no rindió su informe, por lo que nunca fue notificado con copia del documento, así como tampoco se le notificó la solicitud de archivo de la querella. Arguye que todo lo anterior vulneró su debido proceso de ley en su vertiente procesal, ya que no tuvo oportunidad de refutar el

---

[15] *Íd.,* pág. 2. (Subrayado suplido).
[16] *Revisión, Íd.,* entrada 1.

contenido de un informe y de presentar su oposición a la solicitud de archivo de la querella previo a que el DACo emitiera la resolución final. Así, solicita que se ordene al DACo reabrir el caso para que, según solicitado en las mociones de reconsideración, se le conceda la oportunidad de impugnar o validar el informe del inspector y de oponerse a la moción en solicitud de archivo.

Por su parte, el 12 de junio de 2026, la Junta compareció mediante su *Alegato en Oposición de la Parte Recurrida*.[17] Arguye que la determinación de cierre y archivo de la querella encuentra apoyo en el expediente administrativo, por lo que procede concederle deferencia a la decisión de la agencia.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

Es norma firmemente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones de los organismos administrativos. Ello, dado que las agencias administrativas cuentan con vasta experiencia y conocimiento especializado en cuanto a los asuntos que les han sido encomendados.[18]

Como resultado, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[19]

En cuanto a las determinaciones de hecho que realiza una agencia, estas serán sostenidas por el tribunal si se basan en

---

[17] *Alegato en Oposición de la Parte Recurrida, Íd.*, entrada 6.
[18] *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021), citando a *OCS v. Universal*, 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).
[19] *Transp. Sonnell, LLC v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).

evidencia sustancial que obra en el expediente administrativo.[20] Por evidencia sustancial se entiende "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[21] Por lo tanto, la parte afectada por la decisión administrativa deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial.[22]

Ahora bien, respecto a las conclusiones de derecho de las decisiones de las agencias administrativas, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) señala que estas pueden ser revisadas en todos sus aspectos por el tribunal.[23]

Al respecto, recientemente, en *Vázquez v. Consejo de Titulares*,[24] el Tribunal Supremo hizo eco de la decisión del foro federal en el caso *Loper Bright Enterprises v. Raimondo*,[25] y determinó que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. En *Vázquez,* el Tribunal Supremo enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, *supra.* Puntualizó que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. Con ello, nuestro Tribunal Supremo pautó el fin de la deferencia absoluta a las

---

[20] Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675.

[21] *Rolón Martínez v. Superintendente*, 201 DPR 26, 36 (2018); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Otero v. Toyota*, 163 DPR 716, 728-729 (2005).

[22] *Otero v. Toyota*, supra, pág. 728.

[23] Sec. 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675.

[24] *Vázquez v. Consejo de Titulares*, 216 DPR ___ (2025), 2025 TSPR 56 (resuelto el 21 de mayo de 2025).

[25] *Loper Bright Enterprises v. Raimondo*, ___ U.S. ___, 144 S. Ct. 2244, 219 L.Ed.2d 832 (2024).

apreciaciones de derecho arribadas por las agencias administrativas.[26] En conclusión, delimitó que la interpretación de la ley es una tarea que le corresponde a los tribunales y, como corolario, estos foros deben revisar las conclusiones de derecho en todos sus aspectos; ello, como mecanismo interpretativo del poder judicial.[27]

Por consiguiente, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el ente agencial actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional, o (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales.[28]

**B.**

En nuestro ordenamiento constitucional, ninguna persona puede ser privada de su propiedad sin el debido proceso de ley.[29]

El debido proceso de ley tiene dos vertientes: una sustantiva y una procesal.[30] En la dimensión procesal, el debido proceso de ley exige a los componentes del Estado garantizar que, al interferir con los intereses propietarios de una persona, se cumpla con un procedimiento justo y equitativo.[31]

Así pues, en el contexto de los procedimientos adjudicativos, se deben observar las garantías mínimas siguientes: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3)

---

[26] *Vázquez v. Consejo de Titulares*, supra.
[27] *Íd.*
[28] *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).
[29] Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1; Emdas. V y XIV, Const. EE.UU., LPRA, Tomo 1.
[30] *Román Ortiz v. OGPe,* 203 DPR 947, 953 (2020).
[31] *Fuentes Bonilla v. ELA et al.,* 200 DPR 364, 394 (2018).

oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y a examinar la evidencia presentada en su contra; (5) asistencia de abogado, y (6) decisión basada en el récord.[32]

Estas garantías están consignadas en la Sección 3.1 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), la cual establece que en todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los siguientes derechos: (a) derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte; (b) derecho a presentar evidencia; (c) derecho a una adjudicación imparcial, y (d) derecho a que la decisión sea basada en el expediente.[33] Cualquier determinación de una agencia que se haga en contravención a estas pautas mínimas no puede prevalecer.[34]

En cuanto al pronunciamiento de órdenes y resoluciones sumarias por parte de las agencias administrativas, la Sección 3.7 de la LPAU[35] dispone, en lo pertinente, que:

> [...]
>
> (b) Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final, o parcial resolviendo cualquier controversia entre las partes, que sean separable de las controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario.
>
> La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derechos no procede.

---

[32] *Román Ortiz v. OGPe,* supra, pág. 954.
[33] Ley Núm. 38-2017, 3 LPRA sec. 9641.
[34] *San Gerónimo Caribe Project v. A.R.Pe.,* 174 DPR 640, 660 (2008); *Com. de Seguros v. A.E.E.L.A.*, 171 DPR 514, 528 (2007).
[35] 3 LPRA sec. 9647.

La referida sección faculta a las entidades administrativas a disponer de los asuntos ante su consideración mediante resolución sumaria.[36] Dicho mecanismo promueve agilizar el proceso adjudicativo en los casos en los que no estén presentes hechos materiales en controversia.[37] El Tribunal Supremo ha expresado que nada impide que una agencia pueda adjudicar sin celebrar una vista evidenciaria cuando no exista controversia sobre los hechos y toda la evidencia documental que surge del expediente señale la corrección de la determinación de la agencia.[38]

Sobre este particular, la Regla 11.1 del *Reglamento de Procedimientos Adjudicativos* del DACo, Reglamento Núm. 8034 del 14 de junio de 2011 (Reglamento Núm. 8034), menciona lo siguiente:

Regla 11 - Órdenes y Resoluciones Sumarias

El Departamento ordenará el cumplimiento de lo que proceda conforme a Derecho sin la celebración de una vista administrativa, cuando luego de las partes haber hecho sus planteamientos y de haber evaluado la evidencia, no surja una controversia real de hechos. En tal caso, si una de las partes solicita reconsideración, se citará a vista en reconsideración siempre que se establezca la existencia de una controversia real sobre hechos pertinentes.

**III.**

En su recurso, el señor Mestey Villamil alega que el inspector del DACo no rindió su informe y, por tanto, nunca fue notificado con copia del documento, así como tampoco se le notificó la solicitud de archivo de la querella. Señala que todo lo anterior vulneró su debido proceso de ley en su vertiente procesal, ya que no tuvo oportunidad de refutar el contenido de un informe y de presentar su oposición a la moción en solicitud de archivo de la querella previo a que el DACo emitiera la resolución final.

---

[36] *OCS v. Universal*, 187 DPR 164, 177 (2012).
[37] *Íd.,* pág. 178.
[38] *Íd.*, citando a *Mun. de San Juan v. CRIM*, 178 DPR 163, 179 (2010).

En cuanto a la alegación de falta de notificación de la moción en solicitud de archivo por haberse cumplido con el remedio solicitado, la Junta asegura que presentó todos sus escritos a través del portal oficial de servicios en línea de la agencia para el procesamiento de querellas SIAC y dentro del expediente electrónico conocido por las partes y, además, notificó por correo regular al representante legal del señor Mestey Villamil, a su dirección de récord. Con ello, aludió al criterio de la dirección razonablemente calculada para afirmar que la notificación de la moción en solicitud de archivo de la querella a la parte contraria fue una adecuada dentro de las circunstancias particulares del caso.

Se desprende de la moción en solicitud de archivo de la querella que la Junta certificó la notificación de haber notificado el documento al recurrente, por conducto de su representante legal, Lcdo. Francis Daniel Nina Estrella, Calle Bolívar 602 (Bajos), San Juan, PR 00909.[39] Esta es la dirección informada al DACo por el abogado y que consta en todos los documentos por él radicados en favor de su representado, tanto ante la agencia como ante este Tribunal. Por tanto, la moción en solicitud de archivo de la querella sí cumplió con el requisito de notificación a la parte contraria.

En este caso, el señor Mestey Villamil objeta que los acuerdos se llevaran a cabo tras la invitación del inspector del DACo para que se abrieran los canales del diálogo. Apuntamos que no hay disposición en la reglamentación citada que impida o prohíba que el inspector exhorte a las partes a transar o a llegar a convenios.

En otro extremo, nótese que el recurrente no niega la existencia o el contenido de los acuerdos, sino que cuestiona la autoridad del inspector para hacer la exhortación a que las partes entraran en conversaciones y objeta su propia decisión de

---

[39] *Moción Informativa en Cumplimiento de Acuerdos Durante Inspecci[ó]n de[l] DACo y en Solicitud de Archivo*, SUMAC-TA, entrada 4, anejo 8.

voluntariamente consentir al pacto, sin la intervención de su abogado. El recurrente tampoco ha alegado que prestó su consentimiento bajo alguna de las causales que vician e invalidan el consentimiento (error, violencia, intimidación o dolo).

Respecto a la ausencia del abogado del señor Mestey Villamil a la inspección ocular del 3 de marzo de 2026, surge del expediente que la notificación de citación incluyó expresamente al recurrente, a su representación legal, a la Junta y su presidenta, a la administradora del condominio y a la representación legal de la parte querellada. La citación anunció la fecha, hora y lugar de la inspección, así como el deber de las partes de comparecer puntualmente y de cooperar con el funcionario designado.[40] Si el recurrente entendía indispensable la intervención de su abogado durante la inspección, correspondía asegurar su comparecencia o solicitar el remedio pertinente ante la agencia de manera oportuna. Así pues, la incomparecencia de la representación legal del señor Mestey Villamil a la inspección ocular no impedía la reunión. Tampoco era óbice para que el recurrente consintiera llegar a un acuerdo para mitigar la situación objeto de su querella.

Ante el acuerdo entre las partes, para resolver la reclamación del recurrente no era necesario que el inspector del DACo rindiera un informe, ni que se controvirtieran hallazgos. Conforme expuesto, la Regla 11.1 del Reglamento 8034, autoriza al DACo a dictar resolución sumaria luego de que las partes hayan expuesto sus planteamientos y, evaluada la prueba, no surja controversia real sobre los hechos. Así que, aun analizando las alegaciones del señor Mestey Villamil de la manera más favorable para él, procedía decretar el cierre y archivo de la querella.

---

[40] *Notificación de Citación de Inspección, Íd.,* anejo 5.

El recurrente no ha puesto a este Tribunal en posición de resolver contrario a la determinación del DACo.  Este tenía el deber de colocar a este Tribunal en posición de conceder el remedio solicitado.  Así pues, basados en la deferencia y razonabilidad que merecen las determinaciones administrativas, y ante la falta de evidencia que pruebe lo contrario, nos abstenemos de intervenir en la determinación del DACo. Colegimos que no se cometieron los errores argumentados.

**IV.**

Por los fundamentos antes esbozados, *confirmamos* la *Resolución* recurrida.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones